UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARVIN M. JARRETT,

    Plaintiff,

v.                                          Case No. 2:05-cv-195
                                          HON. ROBERT HOLMES BELL

BARBARA BOUCHARD, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Marvin M. Jarrett, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, defendants include M. Miron, Barbara Bouchard, R. Bobo, D. Bergh, Rondeau, C. Smith and D. Kurth, all of whom are employed at LMF.

Plaintiff's complaint alleges that defendant Miron took plaintiff's mattress on February 19, 2003. Plaintiff did not receive a mattress until February 23, 2003. On March 16, 2003, and March 23, 2003, plaintiff alleges that he was denied cleaning supplies from defendants Miron and Rondeau. Plaintiff states that he was on a cleaning supply restriction from January 26, 2003, until February 26, 2003, and defendants Miron and Rondeau refused to allow a porter to clean plaintiff's cell. Plaintiff alleges that after he filed a grievance on the issue, defendant Miron assaulted him by sneaking up to plaintiff's cell while plaintiff had his hand in the food slot and was talking to another prisoner. Plaintiff claims that defendant Miron kicked the food slot door onto plaintiff's hand, causing injury.

Plaintiff alleges that on May 17, 2003, Lieutenant Wonch and defendants Rondeau, Smith and Kurth enforced a container restriction on plaintiff. Plaintiff was taken to a shower module while his cell was searched. Defendant Rondeau remained at the shower area while plaintiff's cell was searched. Defendant Smith returned with defendant Kurth. Defendant Smith opened the shower door and defendant Rondeau told plaintiff to back out. Plaintiff was then grabbed by the neck area and lower back and thrown against the wall. Plaintiff alleges that he was only semi-conscious. Plaintiff was restrained and then put back into his cell. Plaintiff alleges that he received bruises to his face and a broken tooth which was later removed due to an infection.

Plaintiff alleges that defendants Bobo, Bouchard and Bergh authorized plaintiff to be placed on a non-existent status, which allowed use of chemical agents, soft and hard restraints, top of bed restraints, strip cell status, quiet cell status, suicide observation status, self mutilation cell status, and use of force by staff when necessary. Defendants Bouchard and Bobo authorized no out of cell movement (NOCM) status. Plaintiff alleges that NOCM is not authorized by prison policy and is a status defendants created. Plaintiff alleges that he was placed on NOCM status from May 19, 2003, until April 26, 2005, which prevented him from receiving out of cell exercise.

Defendants have filed a motion for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine

issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that defendants violated his Eighth Amendment rights by refusing to provide cleaning supplies, placing him on a mattress restriction and by placing him on NOCM status. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich,* 148

F.3d 596, 600-601 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 1028 (1999). Moreover, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. The federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Plaintiff received a mattress restriction after he rolled up his mattress and used it to strike the cell door window. The warden approved an additional blanket for plaintiff. The mattress restriction was imposed because of plaintiff's improper behavior. The mattress restriction did not violate plaintiff's Eighth Amendment rights. Similarly, plaintiff alleges that he was denied cleaning supplies. Defendants argue that plaintiff refused cleaning supplies or was sleeping at the time cleaning supplies were passed out. Plaintiff has failed to show that his Eighth Amendment rights were violated during the few times that he alleged that he was refused cleaning supplies.

Plaintiff placement on NOCM status was approved by Acting Deputy Warden Bobo on May 19, 2003. Defendant Bobo is the only defendant involved in plaintiff's placement on NOCM status. The restriction is imposed for safety and security reasons on prisoners who are difficult to manage. Plaintiff has a history of disciplinary problems. He has received over 400 major misconduct tickets, including tickets for assaults on staff. Plaintiff exhibited behavior which was dangerous to other prisoners and staff. Plaintiff was convicted of six assault and battery charges on staff between February 19, 2003, and December 31, 2004. While on NOCM status, plaintiff received health care, meals, at least one weekly shower, clothing, cell furnishings, and medically necessary items, including hygiene items. While on NOCM status, plaintiff continued to exhibit assaultive behavior until December 31, 2004. Plaintiff remained misconduct free between that date and April 26, 2005, when it was recommended that plaintiff be removed from NOCM status. Under these

circumstances, in the opinion of the undersigned, defendant Bobo was justified in approving plaintiff's placement on NOCM status. Defendant Bobo has not been served with a summons and complaint in this matter. None of the other defendants were involved in plaintiff's placement on NOCM status.

Plaintiff alleges that on two occasions excessive force was used against him. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Plaintiff alleges that he was assaulted by defendants Rondeau, Smith and Kurth on May 17, 2003.  Defendants explain that when they attempted to remove plaintiff from the shower stall he tried to spit on them, but missed.  Plaintiff was then restrained.  Plaintiff was given a misconduct ticket for the incident and found guilty.  Plaintiff alleges that he suffered injuries as a result of defendants' conduct in restraining him.  Plaintiff complained that his jaw had been broken.  However, medical records reveal that plaintiff sustained no significant injury as a result of this incident.  Plaintiff cannot establish that his Eighth Amendment rights were violated by defendants as a result of this incident.

Plaintiff alleges that defendant Miron kicked plaintiff's food slot door closed and injured plaintiff's hand.  Defendant Miron admits kicking the food slot door closed, but states that he never intended to intentionally injure plaintiff.  Plaintiff received a small laceration to his thumb and some swelling.  Plaintiff was given Tylenol for pain.  In the opinion of the undersigned, there exists no evidence to support plaintiff's claim that defendant Miron deliberately shut the food slot door on plaintiff's thumb.  Moreover, plaintiff received only a minor injury that was treated with an over the counter pain medication.

Plaintiff claims that defendants' actions were the result of retaliatory conduct. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (*en banc*). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that defendants took adverse action against plaintiff, because plaintiff had filed grievances against defendants. However, it is clear that plaintiff's conduct necessitated the restrictions imposed upon him by defendants. Plaintiff engaged in assaultive and disruptive behavior which required intervention. Plaintiff continued to commit misconducts even after restrictions were imposed and privileges were taken away. Plaintiff's conduct failed to improve until he was placed in the very restrictive NOCM status. Once plaintiff finally exhibited appropriate behavior, he was removed from NOCM status. Plaintiff was transferred to a new prison. Unfortunately, the cycle of inappropriate behavior has continued at the new prison. Plaintiff was convicted at Marquette Branch Prison of theft and insolence.

Finally, defendants are entitled to the defense of qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who

stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion the undersigned, plaintiff has failed to show that defendants violated any clearly established rights.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motion for summary judgment. Accordingly, it is recommended that defendants' Motion Summary Judgment (Docket #31) be granted and that this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 16, 2006